DAN COWLING & ASSOCIATES, INC. and Dan
COWLING, JR. *v.* THE BOARD OF EDUCATION OF
CLINTON SCHOOL DISTRICT #1

81-119                                          618 S.W. 2d 158

Supreme Court of Arkansas
Opinion delivered June 29, 1981

*Wright, Lindsey & Jennings*, for appellants.

*Givens & Buzbee*, by: *J. R. Buzbee*, for appellee.

*Rose Law Firm*, by: *Phillip Carroll*, amicus curiae.

RICHARD B. ADKISSON, Chief Justice. After a trial by jury, judgment was entered in the amount of $17,500 against the appellants, Dan Cowling, Jr. and Dan Cowling & Associates, Inc., who had agreed to provide professional architectural services in connection with the construction of four school buildings for the appellee. Appellants argue on appeal that the evidence was insufficient as a matter of law to support the judgment and that the trial court erred in denying their motion for a directed verdict.

In determining on appeal the correctness of the trial court's action concerning a motion for a directed verdict by either party, the test is to take that view of the evidence that is most favorable to the party against whom the verdict is sought and to give it its highest probative value, taking into account all reasonable inferences deducible from it, and to grant the motion only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. *Miller* v. *Tipton*, 272 Ark. 1 (1981); *O'Brian* v. *Primm*, 243 Ark. 186, 419 S.W. 2d 323 (1967); *St. Louis Southwestern Railway Co.* v. *Farrell, Adm'x.*, 242 Ark. 757, 416 S.W. 2d 334 (1967). Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State*, 269 Ark. 119, 598 S.W. 2d 748 (1980).

The terms and conditions of the agreement between the parties are set out in a written contract, the pertinent parts of which are set out in the following paragraphs:

1.1.6 The Architect shall prepare ... Working Drawings and Specifications setting forth in detail the requirements for the construction of the entire project.
. . .

1.1.14 The Architect shall make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. *On the basis of his on-site observations as an architect, he shall endeavor to guard the*

*Owner against defects and deficiencies in the Work of the Contractor.* The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he shall not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents. (Emphasis supplied)

1.1.16   ... The Architect shall make decisions on all claims of the Owner or Contractor relating to the execution and progress of the Work and on all other matters or questions related thereto. ...

1.1.17 The Architect shall have authority to reject Work which does not conform to the Contract Documents.

As indicated by paragraph 1.1.6 of the contract the appellants were required to set forth in detail the specifications for the construction of the building. The requirements for masonry work are set forth in the specifications at page 4-2, the pertinent paragraph of which provides:

4.   WORKMANSHIP.

(a) Field stone building facing shall be laid *uncoursed* in random sizes with full joints of mortar, *and back parged or slushed with waterproof mortar to obtain a solid masonry wall*. Mortar joints shall be raked out 1″ to 1 1/2″ deep from face to stone. (Emphasis supplied lines 2, 3, and 4)

These specifications called for either "parging" or "slushing" of the two stone walls of each building with waterproof mortar. "Parging" means smearing mortar on the surface of the rock as one would a plaster wall; "slushing" means pouring liquid mortar into the space behind the rock (between the exterior sheathing of the inner

wall and the rock wall — in this case, a space shown but not labeled or dimensioned in the architect's plans).

The general contractor, Story Construction Company of Clinton, completed construction of the buildings in 1975. The four interior wall surfaces of each of the four buildings consisted of a vinyl wall covering applied to gypsum board. Two of the exterior walls of each building had concrete sheathing exposed to the elements while the other two exterior walls were built with mortar and native stone by a Clinton stone mason, Elvis Irby, a subcontractor. During the end of the summer of 1977, the interior vinyl covering on the walls with stone exteriors began separating at the seams causing extensive damage which resulted in this suit.

There was substantial evidence that the peeling or delamination was caused by moisture resulting from faulty construction of the stone wall. The stone mason, Elvis Irby, readily admitted that the stones were laid up against the gypsum board's outer sheathing with no space or water-proof mortar left between many of the stones and the sheathing. However, according to the individual appellant's own testimony, the plans called for a space scaling to approximately 7/8'' between the outer layer of gypsum and the interior side of the stone wall. Joe Taylor, an architect who inspected the project for appellants after the damage was reported, testified that there was slushing in some places and not in others, air space in some places and not in others, and that generally "nothing was properly done as far as the stone work was concerned." Other evidence reveals that the architect made numerous trips to the construction site and that the contractor, Elmo Story, specifically showed him the "slushing," and the impossibility of "parging" the area between the sheathing and the stone wall. The architect then approved the slushing method being employed although he testified that adequate waterproofing using this method could not be accomplished because the stones were laid against the gypsum board.

Therefore, in viewing this evidence in the light most favorable to the appellee, we conclude that the architect, by inspecting the rock wall and approving it in its obviously

defective condition, furnished the jury more than substantial evidence from which to find that he breached his contractual duty to guard the owner against defects and deficiencies in the work of the contractor based upon his on-site observations. The trial court is affirmed in its denial of appellants' motion for a directed verdict.