Jerrie L. WILLIAMS *v.* SMART CHEVROLET CO. AND GENERAL MOTORS CORP.

86-304                                              730 S.W.2d 479

Supreme Court of Arkansas
Opinion delivered June 8, 1987

*James L. Hall, Jr.*, for appellant.

*Wright, Lindsey & Jennings*, for appellee Smart Chevrolet Co.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellee General Motors Corporation.

JACK HOLT, JR., Chief Justice. The appellant, Jerrie L. Williams, was driving her new car when the door swung open and she fell out, injuring herself. She filed a lawsuit against appellee Smart Chevrolet Co., from whom she bought the car, and against appellee General Motors Corp., the manufacturer of the car, on product liability and tort theories. The trial court granted both appellees' motions for directed verdicts at the close of Williams' proof. It is from that order that this appeal is brought. We affirm.

William argues on appeal that there was sufficient evidence to submit to the jury the questions of negligence, breach of express and implied warranties, and strict liability for the manufacture, design, material, assembly and repair of the automobile door, door latch mechanism and component parts.

When a directed verdict has been granted, on appeal we take that view of the evidence that is most favorable to the party against whom the verdict was granted and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Dan Cowling & Assoc. v. Clinton Bd. of Educ.*, 273 Ark. 214, 618 S.W.2d 158 (1981). The granting of the motion is upheld only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. *Id.* Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or

another. It must force or induce the mind to pass beyond a suspicion or conjecture. *Id.* Bare conclusions without supporting facts, are not substantial evidence. Substantiality is a question of law. *Pickens-Bond Const. Co. et al.* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979).

Looking at the evidence in the light most favorable to Williams, there was testimony by Williams that she purchased her new Chevrolet Camaro Z-28 from Smart on September 12, 1984, and noticed after a few days that the driver's side door was difficult to close and would work loose after being shut and locked. She returned the car to Smart for repairs and told them about the problem with the door. Smart returned the car to her and, according to Williams, told her the car was fixed. The door continued to work loose. On October 4, 1984, Williams was driving about 10 miles per hour down a straight, level, gravel road when her door, which she testified she specifically remembered shutting and locking with the power locks, suddenly came open. Williams said she fell out of the car, injuring herself. The car went into a ditch but was not damaged. Immediately after the accident, Williams noticed that the driver's door latch mechanism had one of the three securing screws hanging partially out. She returned the car to Smart to be fixed. The door, however, continued to work loose, but it never came open again. She sold the car some fourteen months later.

Williams also offered the testimony of her mother, her sister, and a friend that they rode in the car before and after the accident and noticed that the door would work loose.

Mike Keller, assistant technical director of American Interplex Corp., was Williams' expert witness. He testified that he worked on the car for two or three days in July, 1985, and test drove it on all types of roads and was never able to get the door to come all the way open, including when he tried to force it open. He testified he found no defective parts which would cause the door to fail and come open. He explained that the word "defective" excludes parts which had been abraded or otherwise damaged by external factors. Keller stated that the driver's side striker bolt, as compared to the striker bolt on the passenger door, had one or two additional shims and had two separate wear patterns, as opposed to one on the passenger side. Keller said this indicated to him that

the latch mechanism had engaged at different places on the striker bolt. In addition, the driver's side door latch was abraded and the jaws of the rotor were flared wider, which he believed was caused by uneven contact of the striker bolt with the rotor jaws. Keller testified that this all resulted in an alignment problem with the door. He explained, however, that his examination of the vehicle did not indicate anything that would have allowed the door to come open and he could not document that it had ever previously been in a condition that would cause that to occur.

■ Williams argues the foregoing was sufficient proof of negligence to submit that question to the jury. "In an action for negligence, the evidence is sufficient to show proximate cause if the 'facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred.' " *Cockman* v. *Welder's Supply Co.*, 265 Ark. 612, 580 S.W.2d 455 (1979), *quoting St. Louis-San Fran. Ry. Co.* v. *Bishop*, 182 Ark. 763, 33 S.W.2d 383 (1931). In *Cockman*, the distributor of a grinding disc was sued when the disc exploded while being used. Cockman was dependent on his expert testimony to demonstrate a fact issue and that witness admitted there was nothing in his examination of the disc fragment which would lead him to a conclusion that the disc was defective when it was sold by the distributor to Cockman's employer. He could not say why the disc exploded. This court held:

> Viewing appellant's evidence most favorably, we cannot say that it negates all possibilities sufficiently to remove the asserted issue of liability from the realm of speculation and conjecture so as to entitle him to have the question presented to the jury.

> . . . .

> Here, although there was evidence that the explosion of the disc caused appellant's injuries, there was no evidence from which it could be fairly inferred that any action by appellee . . . was the proximate cause of the exploding disc and appellant's resulting injuries. Appellant's evidence as to proximate cause is not sufficient to remove it from the realm of conjecture or speculation.

■ Here, too, viewing Williams' evidence most favorably,

it does not negate all possibilities so as to remove the question of negligence from the realm of speculation and conjecture. There was evidence that the door came open and that Williams fell out of the car and injured herself, but there was no evidence from which it could be fairly inferred that any action by Smart or General Motors was the proximate cause of the accident. The trial court correctly granted the directed verdicts as to this issue.

■ Williams also objects to the granting of directed verdicts on the question of a breach of an express warranty. In support of this allegation, she testified she purchased her car and received a 12,000 mile warranty and that she also purchased an extended warranty for 36,000 miles. She admits on appeal that she produced no further evidence as to the details of the warranty and that she did not offer the warranty itself into evidence. Without any evidence of an express warranty covering the parts of the car in issue, Williams' argument on this point must fail because of her failure to meet her burden of proof.

The final argument offered by Williams is that it was error to direct verdicts on the issues of strict liability and implied warranty. We reject both theories. Inasmuch as they require similar proof, we will discuss this argument in terms of strict liability. *Higgins* v. *General Motors Corp.*, 287 Ark. 390, 699 S.W.2d 741 (1985).

■ Arkansas has adopted the strict liability doctrine in torts in products liability cases. Arkansas Stat. Ann. § 85-2-318.2 (Supp. 1985) provides:

A supplier of a product is subject to liability in damages for harm to a person or to property if:

(a) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product;

(b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and

(c) the defective condition was a proximate cause of the harm to person or to property.

■ The doctrine of strict liability does not change the burden of proof as to the existence of a flaw or defect in a product,

but it does do away with the necessity of proving negligence in order to recover for injuries resulting from a defective product. *Southern Co.* v. *Graham Drive-In*, 271 Ark. 223, 607 S.W.2d 677 (1980). The plaintiff still has the burden of proving that a particular defendant has sold a product which he should not have sold and that it caused his injury. *Id.* "The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude that it is more probable than not." *Id., quoting* Prosser, The Fall of the Citadel, 32 ATL L.J., p. 21 (1968). We further explained in *Southern Co., quoting* Prosser, Torts, § 102, p. 672 (4th Ed. 1971):

> The difficult problems are those of proof by circumstantial evidence. Strictly speaking, since proof of negligence is not in issue, res ipsa loquitur has no application to strict liability; but the inferences which are the core of the doctrine remain, and are not less applicable. The plaintiff is not required to eliminate all other possibilities, and so prove his case beyond a reasonable doubt . . . [I]t is enough that he makes out a preponderance of probability. . . .

> [I]n the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, and thus raises a reasonable inference that the defendant as argued here, is responsible for the defect.

The plaintiff is not required to prove a specific defect when common experience tells us that the accident would not have occurred in the absence of a defect. *Harrell Motors, Inc. et al.* v. *Flanery*, 272 Ark. 105, 612 S.W.2d 727 (1981). The mere fact of an accident, standing alone, does not make out a case that the product was defective, nor does the fact that it was found in a defective condition after the event. But the addition of other facts tending to show that the defect existed before the accident may make out a sufficient case. *Id., quoting* Prosser, Torts § 102 pp. 672, 673.

This court affirmed a directed verdict for the same appellees, General Motors and Smart, in an analogous case, *Higgins* v. *General Motors Corp, supra.* In *Higgins*, the appellant stepped on the accelerator after a traffic light changed, and

the car shot across the intersection and onto the median. He blamed the accident on a malfunction in the transmission, but presented no direct proof of a defect or of the cause of the accident. Instead he relied on circumstantial evidence, primarily his own testimony, as did Williams in the case before us now. This court stated:

> Initially, we could not say that when a car moves suddenly, even swiftly, into an intersection common experience tells us that it would not have happened absent a defect. Therefore, we examine the evidence to see to what extent appellant negated other causes of the accident.
>
> Appellant offered proof to negate several possible causes, testifying he was in excellent health prior to the accident, that the weather was good on that day and there had been no misuse or abuse of the car. Our difficulty comes in finding appellant adequately negated any cause of the accident due to driver error or control.
>
> . . . .
>
> As to the proof of the defect itself appellant testified the car had had transmission problems intermittently from the time he bought it. The trouble was manifested in the car's hesitation before going into gear. He had taken it to the dealer on several occasions but he continued to have the same problem. The car was about four months old and had approximately 6,000 miles on it.
>
> After the accident appellant had a mechanic completely disassemble the transmission to look for any defect. The mechanic testified as an expert for appellant. . . . However, he could not say whether these defects would cause the car to behave as appellant described. . . . The expert's testimony was inconclusive as to the existence of any defect and even tended to support the theory that the accident was due to driver error.

Here, too, we cannot say that when a car door suddenly flies open while the car is travelling on a gravel road at 10 miles per hour common experience tells us that it could not have happened absent a defect. Therefore, we examine the evidence to see to what extent Williams negated other causes of the accident.

Williams stated that she is positive she shut and locked the door and that she was driving slowly and the road was straight. She testified she was not wearing her seat belt and that, when she saw the door open, she turned to her left and hit the brakes and her left hand came off of the steering wheel. She then fell to the ground, landing on her left hip and the left side of her face. The foregoing does not adequately negate any cause of the accident due to driver error or control. Furthermore, she had an expert examine the car, but he could not say that any of the problems he found were defects or that they would cause the door to come open. The expert's testimony was inconclusive as to the existence of any defect and tended to support the theory that the accident was due to driver error.

This court in *Higgins* concluded by finding that appellant's proof does not go beyond suspicion or conjecture nor raise a reasonable inference that the defect was the cause of the accident. We reach the same conclusion in this case and accordingly affirm the trial court's action in granting the motions for directed verdict.