FARM BUREAU INSURANCE COMPANY *v.*
CASE CORPORATION, d/b/a J. I. Case Company, and
Southwest Implement Company, Inc.

93-1371                                        878 S.W.2d 741

Supreme Court of Arkansas
Opinion delivered July 5, 1994
[Rehearing denied September 12, 1994.]

*Ball, Barton & Hoffman*, by: *David Hoffman*, for appellant.

*Gibson & Hashem*, by: *Hani W. Hashem*, for appellee.

TOM GLAZE, Justice. The facts giving rise to this litigation began with the accidental burning of a tractor which was manufactured by the appellee, Case Corporation, d/b/a J. I. Case Company. Marshall Ricky Sammons, a farmer residing in Desha County, purchased the tractor from appellee Southern Farm Implement Company, Inc. (Southern Farm) in July of 1991. The tractor was destroyed by fire four months later, having only been operated for 100 hours. Sammons filed a claim with his insurance carrier, Farm Bureau Insurance Company (Farm Bureau), which reimbursed Sammons the purchase price of the tractor, less his $50 deductible interest provided under his policy. A subrogation action was filed in Sammons's name against Case, alleging causes of action for breach of warranty, strict liability, product liability and breach of contract. Case answered by general denial and filed a motion to substitute Farm Bureau as the real party in interest. Case's motion was granted over Farm Bureau's objection, and Farm Bureau was substituted for Sammons as the plaintiff. At trial, Case moved for a directed verdict as to Farm

Bureau's strict liability claim, which the trial court granted, but Farm Bureau's other claims were submitted to the jury. The jury returned a verdict in Case's favor, and Farm Bureau now brings this appeal, raising two main points for reversal. Farm Bureau argues that the court erred first when it substituted Farm Bureau as the real party in interest, and again when it granted a directed verdict in Case's favor on the issue of strict liability.

Concerning the first point, Farm Bureau argues that it should have been allowed to continue to pursue its subrogation claims against Case in Sammons's name. We agree with Farm Bureau that the court's reliance on ARCP Rule 17 and *Ark-Homa Foods, Inc.* v. *Ward,* 251 Ark. 662, 473 S.W.2d 910 (1971), was erroneous. While it is true that *Ark-Homa Foods* supports the proposition that, under ARCP Rule 17, an insured who has been *fully* reimbursed for a loss by his insurer cannot maintain an action against the tort-feasor in his own name, the holding in that case is inapplicable to the facts here.

■■ The general rule is that where an insurance company has only partially reimbursed an insured for his loss, the insured is the real party in interest and can maintain the action in his own name for the complete amount of his loss. *McGeorge Contracting Co.* v. *Mizell,* 216 Ark. 509, 226 S.W.2d 566 (1950). It is undisputed in the present case that Sammons was never reimbursed by Farm Bureau for the amount of his deductible. This court has held that where the insured has a deductible interest, he is the real party in interest and the action *must* be brought in his name for his own benefit. *Page* v. *Scott,* 263 Ark. 684, 686, 567 S.W.2d 101 (1978); *Washington Fire & Marine Ins. Co.* v. *Hammett,* 237 Ark. 954, 377 S.W.2d 811 (1964); *see also Thompson* v. *Brown,* 5 Ark. App. 111, 633 S.W.2d 382 (1982). The insured stands as trustee to the insurer as to any amount recovered; the insurer is not a necessary party. *Id.* Accordingly, the trial court committed reversible error in granting Case's motion to substitute Farm Bureau as the real party in interest.

As its second point for reversal, Farm Bureau argues that the court erred in granting Case's directed verdict on the issue of strict liability. Citing *Berkeley Pump Co.* v. *Reed-Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983), the trial court ruled strict liability was inapplicable because Sammons sustained damage

only to the defective product (tractor), and no personal injury was involved.

Arkansas law regarding strict liability for supplying a defective product is found in Ark. Code Ann. § 4-86-102(a)(Repl. 1991), which provides as follows:

> (a) A supplier of a product is subject to liability in damages for harm to a person or to property if:
>
> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;
>
> (2) The product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
>
> (3) The defective condition was a proximate cause of the harm to person or property.

We considered this statute when deciding *Blagg* v. *Fred Hunt Co., Inc.*, 272 Ark. 179, 612 S.W.2d 321 (1981). *Blagg* involved a strict liability claim against a house builder who sold the Blaggs a home in which the builder had installed a defective carpet and pad that contained formaldehyde which emitted fumes and a strong odor. Although the Blaggs only alleged a purely economic injury, the trial court ruled that the evidence of an unreasonably dangerous defect was sufficient to submit the strict liability claim to the jury. On appeal, this court affirmed the lower court's ruling that a strict liability claim should go before the jury. The *Blagg* court reviewed tort law from other jurisdictions, and adopted the view expressed in *Santor* v. *A & M Karagheusian, Inc*, 44 N.J. 52, 207 A.2d 305 (1965), that the responsibility of the maker of an article should be no different where damage to the article sold or to other property of the consumer is involved. *Id.* The court concluded by stating the following:

> We find no valid reason for holding that strict liability should not apply to property damage in a house sold by a builder-vendor.

*Id.* at 190.

In *Berkeley Pump Co.* (which the trial court here relied upon for its decision), this court acknowledged the rule and holding

in *Blagg* that strict liability applies in a situation where the loss or damage alleged is purely economic and relates only to the defective product.[1]

Recently the Eighth Circuit Court of Appeals rendered an opinion in which it discussed the applicability of the strict liability doctrine in cases involving only an economic loss. In *Alaskan Oil, Inc.* v. *Central Flying Service*, 975 F.2d 553 (8th Cir. 1992), Alaskan Oil initiated an action in the United States District Court for the Eastern District of Arkansas in which it alleged that an aircraft it had purchased from Central Flying Service and G. W. Davis Construction Company had deteriorated so badly in one year that it was "economically unfeasible" to repair it. Alaskan Oil stated claims based on breach of warranty, fraud and strict liability. Although the jury returned a verdict for Central Flying Service and Davis on the breach of warranty and fraud claims, it found for Alaskan Oil on its strict liability claim. The Eighth Circuit upheld Alaskan Oil's strict liability award on appeal.

In upholding Alaskan Oil's award, the Eighth Circuit Court of appeals recognized that the majority of courts in the United States hold that a strict liability action cannot be successful if the only damages that occur are to the product itself. However, in applying our decisions in *Blagg* and *Berkeley Pump Co.*, the Eighth Circuit correctly held that Arkansas permits recovery under strict liability when the only damages sustained are to the defective product. In this appeal, Case fails to offer convincing reason why we should reject the views this court fully discussed and adopted in the *Blagg* and *Berkeley Pump* cases.

Farm Bureau also argues that the trial court erred in directing a verdict because the evidence was insufficient to support Farm Bureau's strict liability claim. Again, we hold the trial court erred.

Farm Bureau had the burden of offering proof that the tractor sold by Case was not only in a "defective condition," but was also "unreasonably dangerous." *Purina Mills, Inc.* v. *Askins*, 317 Ark. 58, 875 S.W.2d 843 (1994). We have noted the dif-

---

[1]The decision in *Berkeley* was ultimately decided on the basis that the defective product was not unreasonably dangerous.

ficult problems that arise when proof is presented by circumstantial evidence. *Williams* v. *Smart Chevrolet Co.*, 292 Ark. 376, 730 S.W.2d 479 (1987). The *Williams* court stated that neither the mere fact of an accident, standing alone, nor the fact that a product was found in a defective condition *after* an accident makes out a case that a product was defective. *Id.* However, the addition of other facts tending to show that the defect existed before the accident may make out a sufficient case. *Id.* In the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product not attributable to the defendant. *Id.*

In the instant case, Sammons testified that the tractor he bought had not malfunctioned at any time prior to burning and that none of the lines or hoses leaked prior to the fire. Chris Anderson, who was driving the tractor when it caught fire, had told Sammons that the fire had started behind the electronic dash panel in an area through which the hydraulic lines ran.

Allen Pearlman, a mechanical engineer, stated that he could tell the fire originated at the front of the tractor because the front was burned worse in that area. Pearlman found a separation in a brazed connection that was part of the power steering hydraulic piping, and, according to Pearlman, was designed to be a permanent connection. Pearlman testified that the brazing process is similar to welding and that the quality of the seal depended on, among other things, the manner in which the two pieces to be connected fit together before brazing. Pearlman said that he did not have any metallurgical testing of the parts performed because the area had been contaminated by the fire and the parts had been warped by the heat. Pearlman stated that in his opinion, the fitting could not have come loose absent a defect in the manufacturing or fabrication process. Pearlman thought that the separation of the fitting had progressed from a small hole from which a fine mist of fluid escaped to a total separation which emitted a stream of hydraulic fluid directly onto the heated turbo charger or exhaust manifold. Pearlman based his opinion that the coupling had separated *before* the fire on the fact that an identical fitting located about two inches away had not separated. According to Pearlman, either the turbo or manifold would have been hot enough to cause the escaping fluid to ignite. Pearlman stated that the turbo charger and exhaust manifold located in the tractor's

engine compartment can reach temperatures exceeding 700 degrees and that the flash point of the hydraulic fluid was 285 degrees.[2] Pearlman indicated that the flash point of the mist would have been lower than a pure liquid form of the fluid. Pearlman also stated that the auto-ignition temperature of general purpose transmission fluid is about 1050 degrees.[3] Pearlman also stated that the burn patterns on the separated coupling reflected a more direct exposure to fire fuel than would have been present had the coupling separated after the fire had already started. Pearlman finally related that he found no other condition or circumstance which could possibly have caused the fire.

■■ Pearlman's testimony that an identical connection two inches away had not separated tends to support his theory that the fitting that failed was defective before the accident. Farm Bureau was not required to offer direct proof of a specific defect. *See Williams*, 292 Ark. 376, 730 S.W.2d 479. There is no reasonable argument to be made that a tractor which suddenly catches fire during normal operation is not "unreasonably dangerous." Pearlman's testimony taken as a whole at least raised a reasonable inference that the fitting that separated was defective and that it caused the fire.[4] In addition, other possible causes of the fire were eliminated by Chris Anderson, who said that he looked in the tractor's engine compartment and saw no collected debris or cotton stalks and Allen Pearlman's testimony that Pearlman's examination of the tractor revealed no evidence of any electronic failure. In sum, we hold the issue of strict liability should have been submitted to the jury.

For the above reasons, we reverse and remand this cause for retrial.

---

[2]Flash point is the temperature at which a liquid will ignite if exposed to an open fire source.

[3]Auto ignition temperature is the temperature at which a liquid will ignite without the introduction of an open flame source.

[4]Unreasonably dangerous is defined in the Restatement (Second) of Torts § 402A as requiring something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning characteristics, propensities, risks, dangers, and proper and improper use of the product.