United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1042

_____

Michael R. Dancy,                              *
                                               *
            Appellant,                         *
                                               *   Appeal from the United States
    v.                                         *   District Court for the
                                               *   Eastern District of Arkansas.
Hyster Company,                                *
                                               *
            Appellee.                          *

_____

Submitted: June 12, 1997
    Filed:   September 25, 1997

_____

Before BOWMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.


        Michael Dancy ("Dancy") appeals the District Court's[1] exclusion of his expert witness. Dancy also appeals the grant of summary judgment in favor of Hyster Company ("Hyster"). We affirm.

---

        [1]The HONORABLE HENRY J. WOODS, United States District Judge for the Eastern District of Arkansas.

## I.    BACKGROUND

Dancy began working for Union Camp Corporation in the Spring of 1994 and was trained to operate a "lift truck."  A lift truck is a machine similar in appearance to a forklift.  Its appearance differs in that, instead of having a "fork" in front of the machine to raise and lower heavy objects, a lift truck has a large clamp that encircles and grips large objects.  In this case, Dancy used the lift truck to lift large cylindrical rolls of paper.  On July 7, 1994, Dancy lifted two rolls of paper with the goal of placing them on top of two other rolls stacked on the floor.  He accomplished this by lifting the bottom of two rolls that were stacked on top of each other, thereby lifting both rolls simultaneously.  See Jt. App. at 205.[2]  The lift truck overturned, pinning Dancy's right foot under the lift truck.  Dancy's right leg had to be amputated just below the knee.

Dancy filed suit against the lift truck's manufacturer, Hyster, alleging that the lift truck was defective because it did not have a cage or guard around the compartment to prevent the operator from being pinned under the lift truck.  He also alleged that Hyster was negligent for failing to place a cage or guard around the operator's compartment.  Dancy designated Dr. Richard Forbes as his sole expert witness.  The District Court granted Hyster's motion to strike this designation in light of Daubert v. Merrell Dow Pharmaceutical, Inc., 113 S. Ct. 2786 (1993).  The District Court then granted Hyster summary judgment, concluding Dancy could not prevail in this case without an expert witness.  Dancy has appealed both rulings.

---

[2]The lift truck was capable of safely lifting 3,450 pounds.  There is a dispute in the record as to whether the combined weight of the two rolls was 2,400 pounds or 4,238 pounds.  Like the District Court, we are inclined to believe the latter figure; but, again like the District Court, we decline to reach this issue because it is not necessary to the issues at hand.

## II.   DISCUSSION

### A.  The Expert Witness

Dr. Forbes is a mechanical engineer and a professor at the University of Mississippi and was retained by Dancy in 1996.  He has never designed a forklift, a lift truck, or any other similar machine; his specialty is in the field of thermal science.  At his deposition, Dr. Forbes theorized that the lift truck should have had a guard to keep Dancy's leg within the lift truck's frame.  Dr. Forbes had not tested this theory in any way, had not seen this type of device on a forklift or any other similar machine, and had not even designed the device he suggested would have prevented Plaintiff's injury.  See Jt. App. at 125-27; 130.  Approximately one month after his deposition, Dr. Forbes provided a supplemental report wherein he stated:

> It is my opinion that a permanently-located open-mesh guard on the right side of the lift would have prevented Dancy's injury.  The guard would be located so as to reduce the probability that the operator's legs would leave the interior of the overhead guard during tipover. . . . I am confident that such guards can be designed which will not affect the utility of the lift truck and which will not add any significant cost to the machines.

Jt. App. at 19.  This wording suggests that Dr. Forbes still had not designed or tested the proposed safety device.

"Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of discretion."  Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996).  The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under Daubert, district courts are to perform a "gatekeeping" function and insure that proffered expert testimony is both relevant and reliable. See Penney v. Praxair, Inc., 116 F.3d 330, 333 (8th Cir. 1997); Peitzmeier, 97 F.3d at 296-97; Pestel v. Vermeer Mfg. Co., 64 F.3d 382, 384 (8th Cir. 1995). "Daubert suggests that a trial court, when assessing the reliability of expert testimony, consider (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community." Pestel, 64 F.3d at 384. The District Court considered these factors in this case and concluded that Dr. Forbes's theory could be, but had not been, tested. In fact, Dr. Forbes had not even attempted to design the device he was suggesting was necessary to prevent the lift truck from being defective. Although he opined that the device he envisioned would work, he had no basis for reaching this conclusion. In fact, it appears that Dr. Forbes's views were being altered and refined based on questions raised during the deposition.[3]

---

[3]For instance, Dr. Forbes testfied:

> I'll probably do some thinking about a design after today, . . . . Again, I'm talking about some kind of mesh, some kind of thing you'd see commonly around here on highway brushhogs to protect the operator from throwing objects mainly but doesn't significantly obstruct the view of the things that [the operator] need[s] to see.

Jt. App. at 135. This demonstrates that (1) Dr. Forbes had not seriously considered a

Dancy attempts to avoid the effects of <u>Daubert</u> by contending that it does not apply unless the expert's testimony will rely on scientific principles or methods. We have expressly rejected this argument. <u>See</u> <u>Peitzmeier</u>, 97 F.3d at 297. Dancy also contends that Dr. Forbes's testimony should have been admitted based on his explanation that a device similar to the one he envisioned had been used on bobcats and front-end loaders. The District Court concluded that there are significant differences between these two pieces of lifting equipment and lift trucks: differences that prevent the automatic assumption that what works on one will work on another. Dancy has presented no argument demonstrating the District Court's conclusion in this regard was incorrect, and our review of the record reveals no basis for reaching a different conclusion.

We conclude that the District Court was justified in questioning the reliability and usefulness of Dr. Forbes's testimony. Disallowing his testimony did not constitute an abuse of discretion.

---

particular design and, more importantly, (2) Dr. Forbes had not seriously considered the effect his envisioned safety device would have on the effective and safe operation of the lift truck.

Although Dr. Forbes seemed to have addressed these concerns in his supplemental report, careful reading reveals that Dr. Forbes simply expressed his confidence that an effective device could be created without interfering with the operation of a lift truck; in short, he simply "assumed away" any problems.

B.  Summary Judgment

We review the District Court's grant of summary judgment de novo, applying the same standard as applied by the District Court.  A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The District Court concluded that, without the aid of expert testimony, there was no evidence demonstrating (1) the existence of a defect in the product or (2) negligence by Hyster.  We consider these issues separately, keeping in mind that Arkansas law controls the substance of these two causes of action.

-6-

1.  Strict Liability

"Generally speaking, there are three varieties of product defects: manufacturing defects, design defects, and inadequate warnings." West v. Searle & Co., 806 S.W.2d 608, 610 (Ark. 1991).  Plaintiff has alleged a cause of action based on the existence of a design defect and, faced with the unavailability of expert testimony, contends that expert testimony was not needed to establish the existence of a defect.

Arkansas law does not require expert testimony in all product liability cases. "Strictly speaking, since proof of negligence is not an issue, res ipsa loquitur has no application to strict liability; but the inferences which are the core of the doctrine remain, and are no less applicable." Higgins v. General Motors Corp., 699 S.W.2d 741, 743 (Ark. 1985).  Consequently, "[p]roof of a specific defect is not required when common experience teaches the accident would not have occurred in the absence of a defect." Id.; see also Lakeview Country Club, Inc. v. Superior Products, 926 S.W.2d 428, 431 (Ark. 1996); Williams v. Smart Chevrolet Co., 730 S.W.2d 479, 482 (Ark. 1987).  However, "[t]he mere fact of an accident, standing alone, does not make out a case that the product is defective." Higgins, 699 S.W.2d at 743.  Consideration of this issue also requires examination of the extent to which the plaintiff has negated other possible causes for the accident. See Williams, 730 S.W.2d at 482-83; Higgins, 699 S.W.2d at 743.

Initially, we note that this *res ipsa loquitur*-like doctrine is ill-suited to cases involving defective design for failure to include a safety device. Higgins, Lakeview, and Williams all involved products that did not work in the manner intended; that is,

they involved manufacturing defects. Higgins involved a car that accelerated without warning, Lakeview involved paint that peeled, and Williams involved a car door that unexpectedly opened while the car was moving. In this case, Plaintiff does not contend that the lift truck malfunctioned in any way; he contends the lift truck was not designed properly because it lacked a safety device. Lay jurors would tend to understand products that do not work; they are not likely to possess "common understanding" about how products are designed. We cannot expect lay jurors to possess understanding about whether the mesh guard envisioned by Dr. Forbes would be capable of withstanding the force involved in a fall and be effective in protecting Plaintiff from the injury he received. We cannot expect a lay juror to know whether such a device would increase the risk associated with the vision impairment discussed by Dr. Forbes. We cannot expect a lay juror to know whether the mesh guard itself would cause more injuries than it creates by, for instance, breaking and puncturing the lift truck's operator.[4] Although Dancy does not have the burden of proving that his "alternative safer design was available and feasible in terms of cost, practicality and technological possibility," French v. Grove Mfg. Co., 656 F.2d 295, 297 (8th Cir. 1981), he still has the burden of proving the existence of a defect by showing that a safer alternative design actually exists. He cannot carry this burden without proving that his proposed design will actually work, and we believe the answer to this question is beyond the ken of lay jurors.

---

[4]These points cannot be dismissed as mere speculation on the Court's part; indeed, to do so demonstrates the hazard involved. These are matters the jury is required by law to consider in determining whether a defect exists, and without evidence on the point the jury would be doing nothing more than speculating -- which, of course, cannot be allowed.

Dancy has also failed to negate other causes for his injuries. A jury may believe his testimony that the combined weight of the two rolls did not exceed the lift-truck's specifications. However, there is also evidence that it was not safe to be lifting two rolls of any weight in the manner in which Dancy was lifting the two rolls in July 1994. Nothing in the record negates this as a cause of Dancy's injuries.

We also find support for our conclusion in the outcomes of the three Arkansas Supreme Court decisions referenced above. In Higgins, the court declared that it "could not say that when a car moves suddenly, even swiftly, into an intersection common experience tells us it would not have happened absent a defect" and went on to conclude that the plaintiff failed to "adequately negate[] any cause of the accident due to driver error or control." 699 S.W.2d at 743. In Williams, the court declared that it could not hold "that when a car door suddenly flies open while the car is traveling on a gravel road at 10 miles per hour common experience tells us that it could not have happened absent a defect." 730 S.W.2d at 483. The court further held that the plaintiff failed to negate causation due to driver error, even though she testified "she is positive she shut and locked the door and that she was driving slowly and the road was straight." Id. Finally, in Lakeview, the Arkansas Supreme Court agreed with the trial court that there were numerous reasons why paint would peel, including "misuse and improper application." 926 S.W.2d at 431. After requiring expert testimony in these cases, it seems obvious that the Arkansas Supreme Court would require expert testimony in this case.

## 2.  Negligence

Negligence requires proof that an ordinarily prudent person in the same situation will foresee an appreciable risk of harm to others, causing him or her to act in a more careful manner. E.g., Mason v. Jackson, 914 S.W.2d 728, 730 (Ark. 1996).  Much of what we said with respect to Dancy's product liability claim applies to his negligence claim: absent expert testimony, there is no basis for the jury to evaluate the actions of an ordinarily prudent person in the same situation as Hyster. Cf. Skinner v. R.J. Griffin & Co., 855 S.W.2d 913, 915 (Ark. 1993).[5]  Our conclusion is buttressed by the lack

---

[5] The pertinent quote from Skinner involved Defendant's arguments regarding comparative fault:

> [T]he defendant asks us to hold that . . . "[i]t takes no expert to demonstrate that any decent protective eyewear would have prevented the string from striking appellant's eye, in which event, no such injury could have possibly occurred."  We cannot so hold because here the jury had no basis, except for pure guesswork, to find that safety goggles would have totally prevented the injury or to what degree they would have reduced the injury. . . . Further, assuming goggles were available and practical to wear, the proof did not show whether they would have prevented the string or the stake from entering from the side of the glasses;  what the tensile strength of such glasses was; whether the whipping force of the string and stake, if coming from the front, would have broken or shattered the glasses;  to what extent, if any, the glasses would have reduced or eliminated the injury if they had only slowed the string whipping from the side;  or to what extent, if any, the glasses would have reduced the injury if they had not shattered or broken if the force was from the front.  Thus, a causal connection between the failure to wear some unspecified type of goggles and the injury to plaintiff's eye was not established beyond mere conjecture and speculation.

of any evidence suggesting Hyster's lift trucks had a history of or propensity toward tipping over and causing injuries similar to those sustained by Dancy.

## III.  CONCLUSION

For the foregoing reasons, the District Court's order barring Dr. Forbes's testimony and its subsequent entry of summary judgment in favor of Hyster Company is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

855 S.W.2d at 915.  This conclusion is reinforced by the fact that there is no evidence in the record that Hyster's lift trucks had a history of or propensity toward overturning and pinning their operators beneath them.  In this case, there is no evidence in the record that will permit the jury to do anything other than speculate in the manner described and prohibited in Skinner.