Bobby PILCHER *v.* SUTTLE EQUIPMENT COMPANY;
Blount International; and AFEX Fire Suppression Systems

05-143 223 S.W.3d 789

Supreme Court of Arkansas
Opinion delivered January 19, 2006

*David O. Kemp* and *Jason M. Palculict*, for appellant.

*McMillan, Turner, McCorkle, Curry & Bennington, LLP*, by: *Toney D. McMillan* and *Madeline L. Bennington*, for appellee.

DONALD L. CORBIN, Justice. Appellant Bobby Pilcher appeals the order of the Hot Spring County Circuit Court granting summary judgment in favor of Appellees Suttle Equipment Company, Blount International, and AFEX Fire Suppression Systems. On appeal, Pilcher argues that the trial court erred in granting summary judgment because material questions of fact remained to be answered on his claims for negligence, strict liability, breach of

implied warranties, and deceptive trade violations. We assumed jurisdiction of this case from the Arkansas Court of Appeals as involving an issue requiring clarification of the law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5). We find no error and affirm.

Pilcher, operating as "Pilcher Trucking," purchased a used 1995 Hydro-Ax Feller Buncher for use in his logging business from Appellee Suttle on November 4, 1998. The Hydro-Ax was manufactured by Appellee Blount. Prior to Pilcher's acquisition of the Hydro-Ax, Suttle sold it new to Shawn Gibson on December 21, 1995. At the time that Gibson purchased it, he requested that Suttle install an AFEX automatic fire suppression system on the Hydro-Ax in order to reduce his insurance costs. Suttle complied and billed Gibson separately for the fire suppression system. Gibson subsequently traded in the 1995 Hydro-Ax for a newer model.

When Pilcher decided to purchase the used Hydro-Ax, he had the opportunity to inspect and use the machine for two days after Suttle delivered it to his job site. Pilcher expressed no interest in the fire suppression system, other than to inquire as to what it was. He never asked if it was functional, nor was he aware of what it could or could not do. Pilcher's main concern with the Hydro-Ax was its purchase price. After Pilcher purchased the Hydro-Ax, he used it for over three years without incident. Then, on February 4, 2002, a fire erupted in the motor compartment of the Hydro-Ax. Pilcher attempted to put the fire out by using a hand held, portable fire extinguisher that came with the Hydro-Ax, but to no avail. He also emptied the contents of a water tank, located on the back of the machine, but this also failed. The fire spread, eventually damaging the entire machine.

Pilcher had insured the Hydro-Ax through Shelter Insurance Company. Following the fire, Pilcher submitted a claim to Shelter who, in turn, paid Pilcher $80,000.00 for the loss of his Hydro-Ax. Shelter, as the subrogee of Pilcher, filed suit against Suttle, Blount, and AFEX on February 10, 2002, alleging theories of negligence, strict liability, breach of implied warranties, and deceptive trade violations. Thereafter, AFEX filed a motion for summary judgment on March 25, 2004, arguing that there were no material questions of fact at issue with regard to the claims raised by Pilcher. Blount and Suttle subsequently filed similar motions for summary judgment.

The trial court held a hearing on the motion for summary judgment on June 30, 2004. At the conclusion of the hearing, the trial court announced from the bench that based on the pleadings, depositions, and affidavits, there were no genuine issues of material fact in dispute with regard to Blount and Suttle. A written order was subsequently entered on July 21, 2004, granting summary judgment in full to both Blount and Suttle. Additionally, the trial court found that there was no genuine issue of material fact on the claim for deceptive trade violations as to AFEX, but the trial court reserved ruling on AFEX's motion for summary judgment on the remaining claims. Thereafter, on August 12, 2004, the trial court entered a second order granting summary judgment in favor of AFEX on the remaining claims. This appeal followed.

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005); *Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Giles v. Harrington*, 362 Ark. 338, 208 S.W.3d 197 (2005); *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999). The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Weiss v. Chavers*, 357 Ark. 607, 184 S.W.3d 437 (2004).

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005). This court views evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*; *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Our review is not limited to the pleadings, as this court also focuses on the affidavits and other documents filed by the parties. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997).

## *I. Negligence*

For his first point on appeal, Pilcher argues that the trial court erred in determining that there were no issues of material fact as to whether or not Appellees had been negligent. Specifically, Pilcher claims that Suttle and Blount were negligent in failing to include a workable fire suppression system on the Hydro-Ax that would have prevented the rapid spread of the fire in this case. Pilcher also claims that Suttle and AFEX were negligent in failing to provide clear and precise information, in the form of an owner's manual, to Pilcher, as the end user and owner of the Hydro-Ax, regarding servicing, operation, cautions, and warnings for the extinguishing system. In addition, according to Pilcher, Suttle and AFEX were negligent in failing to install an indicating device that would alert the owner of the Hydro-Ax that the fire suppression system needed servicing. Finally, Pilcher asserts that AFEX was negligent in its installation of the fire suppression system, as it made it impossible to ascertain when the system needed servicing.

Blount counters that Pilcher's claim that it was negligent in failing to include a workable fire suppression system on the Hydro-Ax is not supported by any case law, nor is there any evidence in the record to support this allegation of negligence. Specifically, Blount avers that Pilcher offers no authority for his contention that Blount had a duty to equip the Hydro-Ax with a fire suppression system or that the absence of a fire suppression system was the proximate cause of his damages. According to Suttle and AFEX, summary judgment on the issue of negligence was warranted because Pilcher failed to offer any evidence that either company breached any duty to Pilcher or that such a breach was the proximate cause of his damages.

We agree with Blount that Pilcher has cited no convincing argument or authority in support of his contention that Appellees were negligent. In fact, Pilcher's brief is entirely devoid of any citation to authority in support of any of the negligence claims he raised against Blount, Suttle, or AFEX. Pilcher does not set forth what duty was owed to him by any party, how the parties breached that duty, or how such a breach was the proximate cause of his damages. In fact, his argument on the issue of negligence is nothing more than an abbreviated recitation of the claims originally set forth in his complaint, followed by the conclusory allegation that he has raised an issue of material fact regarding negligence.

This court has repeatedly stated that it does not consider assignments of error that are unsupported by convincing argument or sufficient legal authority. *See, e.g., Ginsburg v. Ginsburg*, 359 Ark. 226, 195 S.W.3d 898 (2004); *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004); *City of Benton v. Arkansas Soil & Water Conserv. Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). We will not do Pilcher's research for him. *See, e.g., City of Greenbrier, Arkansas v. Roberts*, 354 Ark. 591, 127 S.W.3d 454 (2003); *Granquist v. Randolph*, 326 Ark. 809, 934 S.W.2d 224 (1996); *Firstbank of Arkansas v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993). Accordingly, we do not reach the merits of Pilcher's argument regarding negligence.

## II. Strict Liability

Pilcher next argues that the trial court erred in holding that Appellees were not subject to claims for strict liability under the facts of this case. Pilcher admits that there is no case law in Arkansas addressing the application of strict liability to the sale of used goods. He asserts, however, that Arkansas should follow the rationale of those states that have applied strict liability to the sale of used goods, because the policy reasons behind the theory of strict liability, *i.e.*, compensation or the ability to spread the risk, satisfaction of the reasonable expectations of the purchaser or user, and overall risk reduction, would be furthered.

Blount counters that Pilcher failed to submit proof to support his allegation of strict liability. Suttle and AFEX both argue that Pilcher misstates the nature of the trial court's ruling on strict liability. Specifically, they aver that the trial court did not decline to apply strict liability because this was a used product, but rather determined that Pilcher failed to present proof that the Hydro-Ax was defective and unreasonably dangerous. Moreover, each Appellee asserts that the application of strict liability to the sale of used products is the minority view and should not be adopted by this court.

In order to state a cause of action under a theory of strict liability, a plaintiff must plead that: (1) he has sustained damages; (2) the defendant was engaged in the business of manufacturing, assembling, selling, leasing, or distributing the product; (3) the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; (4) the defective condition was a proximate cause of plaintiff's damages. Ark. Code Ann. § 4-86-102(a) (Repl. 2001); *Farm Bureau Ins. Co. v. Case*

*Corp.*, 317 Ark. 467, 878 S.W.2d 741 (1994); *West v. Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991). In *Purina Mills, Inc. v. Askins*, 317 Ark. 58, 875 S.W.2d 843 (1994), this court explained that our law on the theory of strict liability is patterned after the Restatement (Second) of Torts § 402A, the comments to which define "unreasonably dangerous" as requiring something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product. Proof that the product was defective is an essential element of a cause of action based on strict liability. Section 4-86-102(a)(2); *Lakeview Country Club, Inc. v. Superior Prods.*, 325 Ark. 218, 926 S.W.2d 428 (1996).

Pilcher has the burden of offering proof that the Hydro-Ax was not only in a "defective condition," but was also "unreasonably dangerous." *Case Corp.*, 317 Ark. at 471, 878 S.W.2d at 744. This court has noted the difficult problems that arise when proof is presented by circumstantial evidence. In *Williams v. Smart Chevrolet Co.*, 292 Ark. 376, 730 S.W.2d 479 (1987), the court stated that neither the mere fact of an accident, nor the fact that a product was found in a defective condition after an accident, makes out a case that a product was defective. *Id.* However, the addition of other facts tending to show that the defect existed before the accident may make out a sufficient case. *Id.* In the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product not attributable to the defendant. *Id.*

Thus, as a threshold issue, this court must determine whether Pilcher submitted sufficient proof to raise a question as to whether or not the Hydro-Ax was both defective and unreasonably dangerous. A review of the evidence reveals that he failed to meet his burden in this regard.

According to Pilcher, the Hydro-Ax was defective in not having a workable fire suppression system that would have prevented the rapid spread of fire. He further avers that it was error for the trial court to conclude that strict liability does not apply to an "as is" sale of used goods. A review of the trial court's order, however, reveals no such ruling by the trial court. Indeed, the trial court simply found that there were no design defects, that the Hydro-Ax was not unsuitable for the purposes intended, and that it was neither defective nor unreasonably dangerous.

The trial court's conclusions in this regard are supported by the testimony of Pilcher's own experts. William Ford testified that the only defect that he found in the Hydro-Ax was the absence of a fire suppression system. He then admitted that such a defect was remedied by the inclusion of the AFEX fire suppression system on the machine when it was originally purchased by Gibson in 1995.[1] Moreover, Pilcher testified that when he purchased the Hydro-Ax in 1999, he did not believe it to be defective in any way. He further stated that he did not believe it was unreasonably dangerous in any way.

In sum, the trial court did not err in granting summary judgment on the theory of strict liability where Pilcher failed to submit proof that the Hydro-Ax was defective and unreasonably dangerous. Having so determined, it is unnecessary for this court to consider Pilcher's argument regarding the application of strict liability to the sale of used goods. To do so would result in this court rendering an advisory opinion, and this we will not do. *See Tsann Kuen Enters. Co. v. Campbell,* 355 Ark. 110, 129 S.W.3d 822 (2003).

### III. Breach of Implied Warranties

For his third point on appeal, Pilcher argues that it was error for the trial court to conclude that this was an "as is" sale of used goods and that there were no implied warranties of merchantability or of fitness for a particular purpose. According to Pilcher, there was no valid exclusion of these implied warranties. Specifically, Pilcher points to the fact that the contract of sale from Suttle to Pilcher did not contain a written memorialization that it was an "as is" sale and, thus, the implied warranties should apply. Appellees counter that even if the implied warranties apply to the sale of used goods, Pilcher understood that this was an "as is" sale thereby negating any implied warranties.

---

[1] In his reply brief to this court, Pilcher asserts that he sustained his burden on the issue of strict liability and points to the opinion of his expert, Ernest Barany. Pilcher, however, provides no details regarding the nature of Barany's affidavit; rather, he points this court to those pages in the addendum where Barany's affidavits are located. This is not a sufficient manner in which to support an argument on appeal. Again, we reiterate our position that we will not consider allegations of error unsupported by convincing argument. *See City of Benton,* 345 Ark. 249, 45 S.W.3d 805.

The exclusion or modification of implied warranties is governed by Ark. Code Ann. § 4-2-316 (Repl. 2001), which provides in relevant part:

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (§ 4-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> (3) Notwithstanding subsection (2):

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him[.]

In *O'Mara v. Dykema*, 328 Ark. 310, 319, 942 S.W.2d 854, 859 (1997), this court interpreted section 4-2-316 and held that all implied warranties are excluded by expressions such as "as is," "with all faults," or "other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."

 Here, Pilcher testified that he knew that this was an "as is" sale of a used product. He further admitted that he purchased the Hydro-Ax after being allowed to demo it for two

days at his job site. According to Pilcher, he was allowed ample opportunity to inspect the Hydro-Ax. He further admitted that no one from Suttle made any representations to him about the quality of the machine. Suffice it to say, this testimony is sufficient to demonstrate that any implied warranty of merchantability that may have existed was excluded. Moreover, the fact that there was no written exclusion of the implied warranty of fitness does not provide Pilcher with relief because subsection (3) of section 4-2-316 negates the necessity of a writing in an "as is" sale. Finally, pursuant to section 4-2-316(3)(b), any implied warranties were excluded because prior to Suttle's sale of the Hydro-Ax, Pilcher was allowed to inspect and use the machine for two days. Assuming, *arguendo*, that the inoperability of the fire suppression system was a defect, Pilcher had ample opportunity to discover such a defect.

Accordingly, there was no genuine issue of material fact with regard to the breach of any implied warranties; thus, it was appropriate for the trial court to grant summary judgment on this claim.

## IV. Deceptive Trade Violations

Pilcher's final argument on appeal is that the trial court erred in granting summary judgment on his claim for deceptive trade practices. He limits his argument in this regard to Suttle. Suttle counters that the evidence demonstrated that there were no misrepresentations made to Pilcher by anyone at Suttle. The court, however, need not address the merits of this argument as Pilcher has failed to cite to any convincing authority or argument in support of this point on appeal. *See City of Benton*, 345 Ark. 249, 45 S.W.3d 805.

Affirmed.