Ford OLINGER, Plaintiff,

v.

UNITED STATES GOLF
ASSOCIATION,
Defendant.

No. 3:98CV0252RM.

United States District Court,
N.D. Indiana,
South Bend Division.

May 11, 1999.

Thomas R. Lemon, William Douglas Lemon, Lemon Armey Hearn and Leininger, Warsaw, IN, John C. Hamilton, Hamilton Law Firm, South Bend, IN, for Ford Olinger, plaintiff.

Edward A. Sullivan, III, Baker and Daniels, South Bend, IN, Steven L. Jackson, Baker and Daniels, Fort Wayne, IN, Barry A. White, Lee N. Abrams, Guy G. Ward, Mayer Brown and Platt, Chicago, IL, for U.S. Golf Association, defendant.Lemon, Lemon Armey Hearn and Leininger, Warsaw, IN, for Ford Olinger, counter-defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Ford Olinger, a professional golfer with bilateral avascular necrosis, seeks a permanent injunction requiring the United States Golf Association to allow him to use a golf cart in qualifying for (and, he hopes, competing in) the USGA's United States Open Golf Championship. In conjunction with an earlier summary judgment motion, Mr. Olinger submitted the report of Gary Klug, Ph.D. The USGA moves to exclude Dr. Klug's testimony pursuant to Federal

Rule of Evidence 702 as interpreted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The record before the court consists of Dr. Klug's report under Federal Rule of Civil Procedure 26(a)(2)(B), so even were he allowed to testify at trial, Dr. Klug would not be allowed to present additional bases or reasons for his opinions. Accordingly, the record is sufficient to allow the court to decide the *Daubert* issues without a *Daubert* hearing. For the reasons that follow, the court agrees with the USGA and grants its motion *in limine.*

The USGA argues, among other things, that allowing any contestant to ride a cart during competition would give the riding contestants an unfair advantage over the pedestrian contestants by reducing fatigue. In the asserted interest of even competition, the USGA requires that all contestants walk the course during competition.

Dr. Klug opines that "fatigue is a perception which cannot be measured solely by whether a professional golfer walks or uses a cart during a championship event." Fatigue, he explains, differs with the individual, and walking is not a determinative factor. He says that golf is not, from a physiological perspective, a particularly taxing activity: the sport requires only a low level of intensity, which in turns demands only a low level of physical activity.

Dr. Klug states that six factors are required to calculate the amount of energy expended in the physical activity of walking: the person's resting metabolic rate; the person's body mass; the distance traveled; the person's efficiency in walking; the work done not related to walking; and the calories expended in standing rather than sitting. Assuming an average person, a course of about 5 miles, and a round of golf that lasts from 4 ½ to 5 hours, Dr. Klug opines that an average-sized person [1]

uses 80–120 calories a mile, or a total of 500 calories, "approximately equivalent calories consumed in a Big Mac, extended over a period of 4 to 5 hours."

Dr. Klug opines that the amount of energy expended is not alone determinative of how much fatigue an individual perceives. Psychological factors of stress and motivation may be more significant than, and can cause fatigue regardless of, physiological factors such as nutrition, hydration, nervous system function, muscle system function and cardiovascular system function. Dr. Klug notes (the court confesses uncertainty as to where this fits among his other opinions) that hydration is "a critical factor in professional competitive golf" because some events are conducted in high temperatures, but the amount of energy expended in high temperature does not differ significantly from the amount of energy expended in normal temperatures.

Finally, Dr. Klug concludes, "It is impossible to make a determination whether there is a greater fatigue factor in walking rather than using a cart during professional competitive golf without knowing the extent of the stress factor and motivation factor for each participant," and that "it is not possible to determine that Mr. Olinger has a distinct advantage or disadvantage when using a cart compared to an average person who was walking."

The USGA seeks exclusion of Dr. Klug's opinions as to the amount of energy an average person expends in walking a round of golf and the fatigue that results from walking versus riding a cart during a round of golf in championship competition. Dr. Klug's proposed testimony is, the USGA argues, "neither relevant nor reliable". In support of its argument, the USGA turns to the four considerations suggested by *Daubert,* 509 U.S. at 593–594, 113 S.Ct. 2786. The USGA infers that Dr. Klug plugged his six factors into

---

1. The court recognizes this may redundant, since Dr. Klug begins with an assumed average individual, but Dr. Klug does not explain in what ways the individual he assumes for his calculation is "average".

some undisclosed formula to arrive at 500–calories–per–round conclusion, and further infers that some other formula must exist to allow computation based on stress and motivation factors. Dr. Klug, the USGA complains, has not indicated that such formulae (a) can be or have been tested, (b) have been subject to peer review and publication, (c) produce a known or potential error rate, and/or (d) enjoy general acceptance within the relevant scientific community.

Mr. Olinger responds on two fronts, but neither front explains why Dr. Klug's opinions should be considered reliable for purposes of admissibility under Rule 702. First, Mr. Olinger argues that the USGA seeks too wooden an application of the factors identified in *Daubert*. The court agrees (as does, for that matter, the USGA) that *Daubert* does not identify a uniformly applicable test. If ever any doubt existed on that point, it was laid to rest by *Kumho Tire*, 526 U.S. at ——, 119 S.Ct. at 1175:

> *Daubert* makes clear that the factors it mentions do not constitute a "definitive checklist or test." ... And *Daubert* adds that the gatekeeping inquiry must be " 'tied to the facts' " of a particular "case." ... The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence.

Still, recognition that a finding of reliability may flow from factors other than those cited in *Daubert* does not reduce the burden that must be met by a proponent of expert opinion testimony. As the proponent of Dr. Klug's testimony, Mr. Olinger must show that the testimony rests on reliable principles. *See South-*

*land Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1141 (9th Cir.1997). To meet this burden, Mr. Olinger points to Dr. Klug's expertise:

> Dr. Klug brings to this trial an enormous amount of intellectual and academic work in the field of exercise physiology. The subject of Dr. Klug's report is at the heart of his lengthy scientific career. Based upon that lengthy career, punctuated as it obviously is by multiple publications over a great number of years, Dr. Klug is in a very good position to debunk the defendant's effort to prove that a golf cart is an improper accommodation for an individual with Ford Olinger's apparently acknowledged and serious disability. Dr. Klug's lengthy background thus fulfills the Supreme Court's requirement, made clear in *Kumho*, that he has expertise stemming both from professional studies and from personal experience.

To hold that an expert's credentials alone can satisfy the reliability requirement identified in *Daubert* would require the court to ignore the *Daubert* opinion itself, which devoted a fairly lengthy footnote to relating the "impressive credentials" of the experts who opinions were at issue, *see* 509 U.S. at 583 n. 2, 113 S.Ct. 2786 then never again mentioned extent of expertise among the considerations that might be used to decide whether expert scientific testimony is based on reliable principles.

That does not mean the expert's credentials are to be ignored; the test for reliability is, after all, a flexible, case-sensitive one. *See United States v. Vitek Supply Corp.*, 144 F.3d 476, 486 (7th Cir.1998). But adequate expertise is only a necessary constituent of a foundation under Rule 702; it is not sufficient alone.[2]

---

2. The reverse also is true. *See Wintz By and Through Wintz v. Northrop Corp.*, 110 F.3d 508, 512–513 (7th Cir.1997) ("The district judge also concluded that, even assuming Ellenbogen's methodology in reaching those conclusions was proper, his testimony would not be helpful to the trier of fact, since Ellen-bogen, who is neither a licensed physician nor a surgeon, lacked sufficient expertise in [Parder–Will Syndrome], birth defects, or bromide exposure, to qualify him to offer and expert opinion as to the cause of Jessica's abnormalities. We agree with the district court.").

[W]e see no abuse of discretion in the exclusion of the expert. It is true that Dr. Nelson has impressive credentials.... But the fact is that he did no testing on these products, either alone or in combination. Neither did he provide studies which employed such testing. In short, Dr. Nelson offered only speculation. And we have sanctioned the exclusion of speculation offered by persons with credentials as impressive as those of Dr. Nelson.

*Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir.1998). *Accord, DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir.1998) ("the whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions. District courts must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves."); *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318–319 (7th Cir.1996) (concededly qualified expert's insightful, even inspired, hunch about cause of plaintiff's injury inadmissible when not connected to any scientific theory).

■ Thus, while the court may consider Dr. Klug's expertise while evaluating whether his opinions are based on reliable principles—an evaluation that rests deeply within the discretion of the trial court, *see General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)—the court still must find some basis for a finding of reliability, and this record provides none. The absence of support from the factors specifically discussed in *Daubert* does not foreclose a finding of reliability, if other considerations offer such support, and this record provides none. This record discloses a well-credentialed expert who employs an undisclosed methodology to arrive at disclosed opinions. The court cannot evaluate the reliability of the undisclosed methodology or of the principles that support the methodology.

As did the trial court in *Kumho Tire*, this court has first looked to the factors identified in *Daubert*, and then looked for "any other set of reasonable reliability criteria," 526 U.S. at ——, 119 S.Ct. at 1179, and has found nothing to allow the requisite gatekeeping finding that Dr. Klug's expert testimony is based on reliable principles. The court GRANTS the defendant's motion *in limine* to exclude the testimony of Dr. Gary Klug [Docket # 54].

SO ORDERED.