# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3419

_____

| | | |
|---|---|---|
| Gordon E. Miller, Jr., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Baker Implement Company, (Originally | * | District Court for the Eastern |
| sued as Baker Implements Corporation); | * | District of Arkansas. |
| CNH America LLC, formerly sued as | * | |
| Case Corporation and as Case LLC; | * | |
| Walter Kidde Portable Equipment, Inc.; | * | |
| Kidde, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  November 14, 2005
Filed:  March 1, 2006

_____

Before MURPHY, MCMILLIAN[1], and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Gordon E. Miller's cotton picker caught on fire and was destroyed when the machine's fire extinguishers failed to discharge.  His insurer brought this subrogation action against the manufacturers of the cotton picker and the fire extinguishers as well

_____

[1] The Honorable Theodore McMillian died on January 18, 2006.  This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

as the distributor, for negligence, breach of warranty, strict liability, and violations of the Arkansas Deceptive Trade Practices Act. The district court[2] granted summary judgment to the defendants after excluding Miller's proffered experts, and Miller appeals. We affirm.

I.

Miller purchased a new cotton picker in September 2002. The machine had been manufactured by Case LLC (now CNH America LLC) (CNH), and it was purchased from Baker Implement Co. (Baker). It came equipped with two attached fire extinguishers manufactured by Walter Kidde Portable Equipment, Inc. and Kidde, Inc. (collectively "Kidde").[3] While he was operating the machine approximately two months later, he smelled a strange odor. Miller left the engine idling while he and one of his employees investigated the source of the odor. As his employee was inspecting the headers (the parts of the machine where the cotton head is separated from the rest of the plant), flames blew open a panel on one of them. Miller took one of the fire extinguishers attached to the picker and gave it to his employee who tried unsuccessfully to activate it. Miller then detached the second extinguisher, but it also failed to discharge and he called the local fire department. The entire cotton picker was destroyed before the fire could be extinguished.

Miller's insurer Shelter Mutual Insurance satisfied his claim for the picker and then brought this subrogation action in Miller's name against CNH, Baker, and Kidde under state tort law and an Arkansas statute. The asserted basis for his product

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

[3]Miller named both Walter Kidde Portable Equipment, Inc. and Kidde Inc. as manufacturers of the extinguishers in his first amended complaint, but in its answer Kidde Inc. denied having manufactured them.

liability claims were that the picker had not been equipped with an alternative fire suppression system and that its extinguishers had not functioned. Miller also alleged that the defendants had violated the Arkansas Deceptive Trade Practices Consumer Protection Act, Ark. Code § 4-88-107(a), by committing deceptive and unconscionable trade practices.

The parties held a teleconference on May 28, 2003 to schedule pretrial discovery; they filed their scheduling conference report on June 6, 2003. Initial disclosures were to be made by July 16, and they stipulated that Miller's initial expert reports would be due on January 15, 2004. Defendants had twenty one days from the date Miller submitted his experts to submit their reports, and Miller then had fifteen days to produce rebuttal reports. The parties also agreed that Miller's experts would be deposed first and that all discovery should be completed by June 2, 2004. The district court entered a final scheduling order on June 12, 2003, setting the discovery deadline for June 2, 2004, the motion deadline for June 18, and the trial date for August 23, 2004.

On January 19, 2004, after Miller's deadline for tendering his expert reports had passed, he submitted the report of William Ford to the defendants. Ford, a registered engineer employed by Accident Reconstruction – Technical Investigations, LLC, opined in what was labeled a preliminary report that the fire had started in the number two header and spread upward into the cab. Ford observed several broken spindles in that header and concluded that mechanical friction had caused the header to ignite. He reported that cotton, vegetable matter, lubricants, and plastic would have fueled the fire, that an onboard fire suppression system or operable fire extinguishers would have likely limited the damage, and that fires in cotton pickers are not uncommon and should be considered foreseeable.

Within the next weeks, CNH, Kidde, and Baker filed motions for summary judgment and to exclude Ford's testimony. They argued that Ford's preliminary report

was untimely and that it failed to meet the expert testimony requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). They asserted that Ford's report had not shown that it was possible to equip this particular picker with an onboard fire suppression system, that operable fire extinguishers would have limited the damage, and that the extinguishers had malfunctioned. Defendants submitted their expert reports to Miller on February 5 and 6.

Miller submitted two other additional expert reports after the January 15 deadline and after the defendants had filed their summary judgment motions. One was the report of Jim Swain submitted on February 9. Swain, who was employed by Unified Investigations & Sciences as an origin and cause investigator, noted that the fire had spread rapidly and concluded that a broken spindle in the second header had caused the fire and that the failure of the extinguishers to discharge had contributed to the extensive damage. Miller then moved on February 17 to enlarge the time to allow the submission of both Ford and Swain's reports. The defendants submitted supplemental briefs objecting to the motion to enlarge and seeking to exclude Swain's testimony, arguing that the proposed testimony of both Ford and Swain failed to meet the requirements of Rule 702 and Daubert and that summary judgment remained appropriate.

Miller also moved on March 12 for the late designation of expert Ernest Barany, who had previously been employed as an engineer by Kidde and its successor for more than forty years. In support of his motion, Miller stated that Barany's report "provide[d] a complete statement of all opinions to be expressed by him and the basis and reasons therefore." In his report Barany opined that the fire would have caused minimum damage had the cotton picker been equipped with an automatic preengineered fire extinguishing system such as those available for combine harvesters and other pieces of large machinery. He concluded that the fire extinguishers had been defective and that cartridge operated extinguishers should have

-4-

been installed instead of rechargeable stored pressure models. Defendants opposed the motion to designate Barany on the ground that it was untimely, coming nearly two months after Miller's January 15 deadline for submitting expert reports.

The district court ruled on defendants' motions on June 3, 2004, the day after discovery was to close. It granted the motion to exclude the testimony of Ford and Swain because it found their opinions unreliable and denied Miller's motion for the late designation of Barany because his report failed to meet the requirements of Rule 702 and Daubert. After pointing out that Miller was required to present expert testimony to establish that it would have been possible to equip Miller's picker with the proposed safety features and that they would have decreased the damage but that he had not done so, it granted summary judgment in favor of CNH and Baker. See Dancy v. Hyster Co., 127 F.3d 649, 653-54 (8th Cir. 1997). It also granted summary judgment to Kidde after finding that Barany's affidavit failed to establish that a manufacturing defect rendered the extinguishers defective and failed to negate the likelihood that something other than a defect had caused the extinguishers to malfunction.

On the same day the district court ruled on defendants' motions and one day after the June 2, 2004 discovery deadline had expired, Miller filed a motion to compel defendants to respond to his discovery requests and to produce the names of corporate representatives for depositions. Two days earlier he had moved for a continuance of the discovery deadlines and trial date, arguing that defendants had failed to respond to his discovery requests and seeking permission to depose corporate representatives. Subsequent to its order granting summary judgment to the defendants, the district court denied Miller's motion to compel as moot.

After judgment was entered, Miller filed a motion to alter or amend judgment under Rule 59(e) or for relief under Rule 60(b), arguing that the district court had misapplied Daubert and that the court should have permitted the testimony of Ford,

Swain, and Barany. He also claimed that discovery misconduct by the defendants had led to manifest injustice. Miller argued that defendants had concealed evidence of multidistrict product liability cases consolidated in the Eastern District of Arkansas which defendants should have revealed in answer to his discovery requests. In re: Case IH Cotton Picker Product Liability Litigation, MDL Docket 1221 (Hon. G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas presiding) (settled July 19, 2001). In support of his motion, Miller submitted an article by Dr. James Kolka about the multidistrict cases and the 1999 affidavit of Kevin O'Neill on behalf of plaintiffs in that litigation asserting that he had installed effective onboard suppression systems on cotton pickers. The district court denied Miller's motion, reasoning that Miller could have timely discovered evidence of the multidistrict litigation since it was a public proceeding, that O'Neill's affidavit would not affect its earlier finding that Miller's proposed expert testimony failed to offer a reasonable basis for concluding that operable extinguishers or an onboard fire suppression system would have effectively reduced the damage to Miller's cotton picker, and that Miller's attack on the judgment would best be addressed in an appeal.

## II.

Miller appeals, arguing that the court erred by excluding the testimony of his proposed experts, by not complying with the substantive and procedural requirements for evaluating expert opinions, and by denying his motion to alter or amend judgment.

Miller argues that the district court was required to hold a Daubert hearing before excluding the proposed testimony of Ford and Swain and that their opinions were sufficiently reliable to fulfill the requirements of Rule 702. Appellees respond that Ford and Swain failed to establish the basis for their conclusions and that the extensive record allowed the district court to exclude their testimony without holding a hearing. We review a district court's decision concerning the admission of expert

testimony for an abuse of discretion. <u>Peitzmeier v. Hennessy Indus., Inc.</u>, 97 F.3d 293, 296 (8th Cir. 1996).

Miller argues that the district court abused its discretion by failing to hold a <u>Daubert</u> hearing before ruling on defendants' motions to exclude the proposed testimony of Ford and Swain. He asserts that there were complex factual disputes and the experts had never been deposed. While <u>Daubert</u> hearings may be necessary in some cases, the basic requirement under the law is that the parties have an "opportunity to be heard before the district court makes its decision." <u>Group Health Plan, Inc. v. Philip Morris USA, Inc.</u>, 344 F.3d 753, 761 n. 3 (8th Cir. 2003) (internal citations omitted). Here, Miller had responded to the defense motions to exclude by submitting affidavits from Ford and Swain, a detailed explanation of their expected testimony, and a legal memorandum addressing <u>Daubert</u>. He thus had the opportunity to present his arguments, and we conclude that the district court did not abuse its discretion by failing to hold a <u>Daubert</u> hearing.

Both the federal rules and the <u>Daubert</u> case provide guidance on admission of expert testimony. Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In <u>Daubert</u>, the Supreme Court identified some of the factors to consider when assessing the reliability of expert testimony: (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community. 509 U.S. at 593-95; <u>Dancy</u>, 127 F.3d at 652 (internal citation omitted). The district court fulfills its role as gatekeeper by screening the proposed evidence and evaluating it in light of the specific circumstances of the case to ensure that it is reliable and

sufficiently relevant to assist the jury in resolving the factual disputes. Daubert, 509 U.S. at 592-93; Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005).

The crux of Miller's product liability complaint is that the cotton picker's lack of an onboard fire suppression system and its inoperable extinguishers allowed the fire to spread and engulf the entire machine. Arkansas law requires that a plaintiff who claims product defects must show that an alternative design was feasible. See Dancy, 127 F.3d at 654 (applying Arkansas law). Neither Ford nor Swain stated that an onboard fire suppression system was available or that it could have been employed on Miller's machine. Moreover, both pointed out how fast the fire grew. Swain noted that Miller had left the engine running after he smelled fire and that the fire had spread rapidly. Ford also explained that the abundance of available fuel for cotton picker fires enabled them to spread quickly, and neither expert substantiated a basis for their conclusions that extinguishers would have contained the fire. Since neither Ford nor Swain showed that an alternative design was feasible or possible, we conclude that the district court did not abuse its discretion by granting defendants' motion to exclude their testimony. Id.

Miller moved to designate Ernest Barany as an expert nearly two months after the expiration of his deadline for designating experts had expired. The district court denied Miller's motion because Barany failed to demonstrate that it would have been possible to equip Miller's picker with an onboard suppression system, that this cotton picker required an onboard suppression system, that the extinguishers were defective, or that cartridge extinguishers could have limited the damage caused by this fire. Miller argues that the court abused its discretion and deprived him of the "right to be heard" by undertaking a Daubert analysis sua sponte and excluding the evidence. See Group Health Plan, Inc., 344 F.3d at 761 n. 3. He also argues that Barany's report, taken together with those of Ford and Swain, fulfilled the relevance and reliability requirements of Daubert and Rule 702. Appellees respond that the court had discretion on how to handle the motion and in ruling on it. They argue that Barany's

proposed testimony failed to meet the <u>Daubert</u> requirements, that it was untimely, and that we can affirm on any ground supported by the record. The parties agree that our review is for abuse of discretion. <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 141-42 (1997).

A district court's <u>Daubert</u> inquiry need not take any specific form, and its sua sponte consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling. <u>See</u> <u>Kirstein v. Parks Corp.</u>, 159 F.3d 1065, 1067 (7th Cir. 1998). Here, the district court undertook its <u>Daubert</u> analysis in respect to Barany's report after Miller had identified it as "a complete statement of all opinions to be expressed by him and the basis and reasons therefore" and after the parties had addressed the <u>Daubert</u> standards in their earlier briefs. The district court had a sufficient record on which to determine whether his proposed testimony established the feasibility of employing an onboard fire suppression system on Miller's cotton picker or whether operable fire extinguishers would have decreased the damage, and we conclude that it did not abuse its discretion by undertaking a sua sponte <u>Daubert</u> analysis in dealing with the motion to designate Barany.

Miller argues that even if the court had discretion to undertake a <u>Daubert</u> analysis of Barany's proposed testimony, the court abused its discretion when it found that his testimony together with that of Ford and Swain failed to fulfill the relevance and reliability requirements of Rule 702 and <u>Daubert</u>. Even if all three expert reports were considered together, however, Barany's report could only have established that it would have been possible to install an onboard fire suppression system on a combine harvester, not on the cotton picker purchased by Miller. <u>See</u> <u>Dancy</u>, 127 F.3d 649. There would still be no reliable showing from which a jury could find that operable extinguishers or cartridge extinguishers would have limited the damage caused by this fire. The district court did not abuse its discretion when it considered <u>Daubert</u> in ruling on Miller's motion to designate Barany after the expert deadline had

expired and when it found that the proposed testimony failed to fulfill the requirements of Rule 702 and Daubert.

After judgment had been entered in favor of the defendants, Miller moved to alter or amend judgment under Rule 59(e) or Rule 60(b). On appeal Miller argues that the district court should not have denied the motion because appellees engaged in discovery misconduct and hid material evidence from him; he says that he had diligently pursued discovery and that the court should have considered what he claims was newly discovered evidence from the multidistrict litigation dealing with cotton picker fires. Miller points out that in interrogatories served on October 2, 2003, he had asked defendants for information regarding "any complaint . . . initiated against [them] concerning similar occurrences involving similar products or comparable products which allegedly caused a fire." In support of the motion Miller had also submitted Kevin O'Neill's affidavit, and he argues that the district court abused its discretion by considering Daubert on its admissibility. Appellees respond that the information Miller discovered after judgment had been public, that the multidistrict litigation involved cases that had been consolidated under Judge Eisele in the same judicial district in which Miller's case was proceeding, and that the multidistrict cases had distinguishable facts, pointing out in particular that the fires in those cotton pickers had originated in the transmissions rather than in the headers. We review the denial of motions under Rule 59(e) or 60(b) for an abuse of discretion. See Schinzing v. Mid-States Stainless, Inc., 415 F.3d 807, 813 (8th Cir. 2005); Sellars v. Mineta, 350 F.3d 706, 715 (8th Cir. 2003); U.S. Xpress Enter., Inc. v. J. B. Hunt Transp., Inc., 320 F.3d 809, 816 (8th Cir. 2003).

In order to prevail on his motion, Miller must show that he had been unable to uncover the newly discovered evidence prior to the court's summary judgment ruling. Rule 59(e) motions are not available to "introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to judgment." Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills,

141 F.3d 1284, 1286 (8th Cir. 1998) (internal citations omitted). Similarly, a Rule 60(b)(2) motion based on the discovery of new evidence must show (1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result. E.E.O.C. v. The Rath Packing Co., 787 F.2d 318, 331 (8th Cir. 1986). Under Rule 60(b)(3), Miller must also show that appellees engaged in some type of fraud, misrepresentation, or misconduct that prevented him from "fully and fairly presenting [his] case." Sellars v. Mineta, 350 F.3d 706, 715 (8th Cir. 2003)

Appellants had objected to Miller's interrogatory as being overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence. Their objections and responses to Miller's interrogatories were submitted by the end of January 2004, long before the discovery deadline of June 2, 2004 and the June 18, 2004 motion deadline. Miller nevertheless waited until June 3, 2004 to move to compel. That was the same day the district court issued its decision on the motions to exclude his expert testimony and for summary judgment (originally filed in early February). Miller does not explain why he failed to avail himself to available discovery remedies before the district court issued its order granting summary judgment to defendants or why he was unable to find an expert in onboard fire suppression systems for cotton pickers or the publicly available multidistrict litigation records prior to entry of that order.

The multidistrict litigation records were publicly available in the same judicial district prior to the summary judgment ruling, and Miller had failed to pursue discovery diligently. The district court did not consider Daubert in discussing O'Neill's affidavit but concluded that his 1999 affidavit would not affect its conclusion that Miller had failed to submit admissible evidence to establish that an onboard suppression system would have limited the damage caused by the fire to the picker he

-11-

purchased in 2002. The district court based its decision on the record produced by the parties and the procedural history of the case, and we conclude that it did not abuse its discretion in denying Miller's post judgment motion.

For these reasons the judgment of the district court is affirmed.

_____